UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | Crim. No. 07-90(RMC) |
| : | |
| **DINESH MEHAR,** : | |
| Defendant : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING[1]**

The defendant, Dinesh Mehar, through undersigned counsel hereby submits the following Memorandum in Aid of Sentencing. The defendant respectfully requests that that he be sentenced to a period of probation with the conditions that he serve twelve months of home detention with electronic monitoring, pay a fine, and complete a significant number of community service hours.

I.   **OFFENSE LEVEL CALCULATIONS AND RESTITUTION .**

1.   Consistent with his agreement with the United States, and the calculations of the Probation Office, the defendant agrees that the Adjusted Offense Level is 21 (PSI, Line 24). After adjusting three levels for "timely" acceptance of responsibility, U.S.S.G. Sects. 3E1.1 (a), (b), the defendant's Total Offense Level (P.S.I., Line 27) is 18. Offense Level 18, Criminal History Category I results in a U.S.S.G. sentencing range of 27 to 33 months.

2.   The United States calculated the amount of restitution in this case as $232, 975.21. See 18 U.S.C. 3663 (A)(a)(1). In his plea agreement, and consistent with the Statement of Facts, the defendant agreed to the accuracy of this amount and the PSI concurs that this amount

---

[1] The attachments to this memorandum have not yet been filed due to formatting problems,

constitutes the total loss.  As soon as his employer confronted him on April 8, 2005 with the amount of loss attributed to unauthorized check payments, Mr. Mehar signed a promissory note agreeing to make prompt reimbursement in full within 60 days.  By June 2, 2005, Mr. Mehar had complied with the terms of that agreement, and had paid Weaver and Sons, Inc. the full amount agreed upon, $192, 433.  This amount was paid back well in advance of the initiation of the criminal investigation. When Mr. Mehar was informed that additional losses, based largely on improper credit card charges, totaled an additional $40, 542. 21, he agreed to make the victim whole by promptly paying back the additional amount. As such, in advance of the May 18, 2007 plea in this case, Mr. Mehar presented a money order to the Weavers for $40, 542. 21, the full balance due. In this fashion, as acknowledged by the United States in open court at the plea, Mr. Mehar has fully reimbursed the Weavers for the loss amount plus expenses, and there is no longer a need for a restitution order.

**II. 18 U.S.C. 3553(a) FACTORS; SUGGESTED SENTENCING PLAN**

3.  Clearly the defendant's offense conduct was in contrast to his otherwise laudable behavior as a responsible citizen, and he has demonstrated remorse for that aberration.  The defendant has virtually no criminal history and his criminal history level is I. (His only other contact with the Criminal Justice System occurred when he was arrested 18 years ago for Attempted Driving While Impaired, and he successfully completed a term of probation before judgment in that matter.)   While his misconduct here was serious, the defendant accepted responsibility for his conduct well in advance of the initiation of the criminal investigation.[2]

---

and will be filed within twenty-four hours.

[2] For guidelines purposes, amount of loss is reduced by the amount of money returned to the victim before the offense was detected. U.S.S.G. 2B1.1, App. Note 3 (E).  While the timing of the defendant's repayments here therefore fail to qualify as a credit against the loss amount, it is noteworthy that he paid back most of that amount before he knew that a criminal investigation would be initiated.

When advised by the Weavers that he had misappropriated company funds, he immediately acknowledged his wrongdoing and agreed to pay them back in full, based upon their calculation of the loss. He at no time asked for copies of the checks to verify the loss—rather, he was contrite, and agreed to the company's calculation of its loss and its terms of repayment. He then kept his word by meeting the terms of the promissory note that he had executed, and repaid the full amount agreed to within 60 days.

    4. Once the criminal investigation was initiated, Mr. Mehar continued to demonstrate his contrition by agreeing to an additional loss amount that was calculated by the government without attempting to dispute its accuracy or to "negotiate" a lower amount. He then repaid that additional amount to the Weavers before the filing of the criminal information, thus eliminating the need for a restitution order. He also timely entered into a pre-indictment plea agreement, thus obviating the need for grand jury proceedings that would have further inconvenienced the victims, and for the government to return an indictment. Again, in accepting the plea agreement and statement of facts, he never countered the government's calculation of the loss amount that determined his guideline sentencing level.

    5. The defendant is currently unemployed for one of the few times in his adult life. He served honorably in the Indian Air Force for twenty years, from 1967 until 1987. He immigrated to the United States shortly thereafter, and worked for Weaver Brothers from 1988 until 2005 as their credit manager. He subsequently worked as the office manager for Business Publishers Inc. until the company was sold. Thereafter he was employed by the Community School for Autistic Adults and Children as an Assistant Controller until May of this year. Since being laid off from that position, Mr. Mehar has assiduously sought employment, and has applied for over 50 jobs.

      6. The defendant serves as the main financial support for his family, including his wife and two of his three daughters. During the period that he has been unemployed, the family has lived off his wife's limited income as a day-care provider, combined with his short-term unemployment benefits. The defendant also cares for his daughter Pooja who has suffered from Multiple Sclerosis for the past four and a half years, and who has difficulty ambulating. See Attachments -B- Letter of Pooja Mehar, -C- Letter of Dr. James Yan. Pooja Mehar has been diagnosed as having, " Extensive intrinsic parenchymal signal abnormality… throughout the brainstem… and similar signal abnormality at the upper thoracic spinal cord…(t)he findings are consistent with the presence of multiple sclerosis." See Attachments -D-, -E-, Adventist Healthcare Cervical Spine and Brain MRI Reports, 8/21/06. As of April 13, 2007, her condition had not improved. See Attachments -F-, - G-, Adventist Healthcare MRI Reports, 4/13/07. It is Mr. Mehar who has the responsibility of administering daily injections to his daughter and of administering massage therapy to her legs in an effort to keep her from becoming wheelchair bound; he has also escorted her to India where she has received ayurvedic treatment for her ailment, See Attachment –H-, Letter of Soukya International Holisitic Health Center, and he otherwise manages her medical care. See Attachment –I-, Letter of Veena Mehar, Defendant's Wife. If the defendant is incarcerated, he will no longer be able to perform these functions for his daughter. Nor is the defendant's wife a realistic substitute: she is unable to administer the injections, and while shouldering the full burden of supporting the family, she would not be able to discontinue or decrease her obligations as a child-care provider in order to assist her daughter. See Id. Absent the defendant's financial contribution, it would also be highly unlikely that the Mehar family would be financially able to meet their monthly mortgage obligation and to continue to reside in the family residence. This circumstance would be extremely difficult for

Pooja Mehar, as relocation and its related stress are factors would likely inhibit her recovery. See Attachments -C-; -J-, Letter of Anjoli Bhaskar, Defendant's Daughter.

    7.   The federal courts, even in the pre-Booker era, United States v. Booker, 543 U.S. 220 (2005), recognized that family circumstances may constitute an appropriate basis to sentence an offender below the otherwise applicable guideline range, especially where the defendant maintained a more than fungible relationship with an ill family member. See United States v. Alba, 933 F.2d 1117, 1122 (2d Cir.1991) (upholding departure where defendant lived with disabled father who depended on defendant to assist him moving in and out of wheelchair); United States v. Haversat, 22 F.3d 790, 797-98 (8th Cir.1994) (defendant's care was irreplaceable element of treatment for mentally ill spouse); United States v. Sclamo, 997 F.2d 970, 972-74 (1st Cir.1993) (defendant had special relationship with child with psychological and behavioral problems).

    8.  In United States v. Dominguez, 296 F. 3d 192, 199-200 (3d Cir. 2002), a pre-*Booker* case, the Third Circuit remanded for re-sentencing; the trial court therein had based its failure to depart on its mistaken interpretation that under the Guidelines, it lacked the authority to do so based upon a defendant's family circumstances. The Court in Dominguez, a banking fraud case presenting circumstances on all fours with Mr. Mehar's, advised the trial court that the latter could exercise its discretion to grant a downward departure to a non-imprisonment sentence on remand, despite the then mandatory character of the Guidelines:

"Having now clarified our jurisprudence, we observe that in this case such a downward departure would be within the District Court's discretion given its findings regarding Dominguez's extraordinary family needs and the absence of any other readily available source of meeting those needs. Dominguez has been terminated from her banking position and poses no threat to society, so, incapacitation appears unjustified. She has lost her employment and her

reputation, and hurt and humiliated her parents, all for no gain, and hence, her punishment will have a significant deterrent effect. … Finally, as Dominguez is a contrite and educated woman with no past criminal history, and has received mental health counseling, the trial court may conclude that incarceration would serve no rehabilitative purpose. In sum, the District Court would be well within its discretion in determining that none of the purposes underlying the Guidelines would be disserved by reducing Dominguez's sentence."

    9. Prior to the Supreme Court's mandate in *Booker*, under the Guidelines courts were discouraged from taking family circumstances into account in imposing sentence, see U.S.S.G. § 5H1.6. After *Booker,* however, the fact that a factor is discouraged (or even forbidden) under the Guidelines does not make it irrelevant when a court is weighing statutory factors apart from the Guidelines. United States v. Aitoro, 446 f.3d 246, 255 (1st Cir. 2006). Consistent with the dictates of Booker, "[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task." United States v. Collington, 461 F. 3d 805, 807 (6th Cir. 2006), quoting United States v. Foreman, 436 F.3d 638, 644 n. 1 (6th Cir.2006) (emphasis in original). (Trial court's sentence of mandatory minimum sentence of 120 months in drug trafficking and firearms case where guidelines called for 168-210 months upheld as reasonable in light of family history and other factors.) A district court is permitted to vary from the guidelines in order to impose a sentence that fits the mandate of Section 3553(a). Id. In fact, as our Circuit has recently emphasized, "…. A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-*Booker* regime. (Citations omitted). Another approach, the correct one in our view, is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)."

United States v. Pickett, 475 F. 3d 1347, 1353 (D.C.Cir. 2007).

      10. Accordingly district courts now have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed not ordinarily relevant, such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities. United States v. Husein, 478 F. 3d 318 (6th Cir. 2007). There is of course no mathematical formula that limits the extent of the variance, as "… the very nature of individualized sentencing makes it difficult for (an appellate) court reviewing a well-reasoned decision by a district court with day-to-day expertise in sentencing to conclude that a sentence is unreasonable merely by looking at the extent of the variance." United States v. Cherry, 487 F. 3d 366, 373 (6th Cir. 2007). See United States v. Fuson, No. 05-3782, 2007 WL 414265, at *6 (6th Cir. Feb.8, 2007) (holding, in a case involving a felon's possession of an antique handgun, that a one-day sentence despite the 27-to-33 month applicable Guidelines range was both procedurally and substantively reasonable.)

      11. In United States v. Husein, supra, a narcotics distribution case that presented family circumstances parallel to those of Mr. Mehar, the Sixth Circuit recently upheld a departure and a variance to a sentence of supervised release from a Guideline sentence at Offense Level 21 (37–46 months), based largely upon the defendant's familial situation. In rejecting the government's arguments that it was improper for the trial judge to have ordered such a reduced sentence, since other adult relatives were available to care for the defendant's gravely ill father, the Court noted: "But the mere existence of potential alternative sources of assistance or care is not sufficient to undermine a claim of irreplaceability. Instead, as the wording of the Guidelines makes clear, the alternatives must also be "reasonably available," which has been understood to mean "feasible" and "relatively comparable" to the defendant. Id. at 327; See United States v.Roselli, 366 F.3d 58 (1st Cir. 2004) (despite presence of other relatives, downward departure

appropriate for father who along with his wife cared for two children afflicted with Cystic Fibrosis). Likewise here, the government's assertion that Mr. Mehar's family "will continue to thrive" without him, *Government's Memorandum In Aid of Sentencing* at 4, ignores the reality of the Mehars' family situation. As stated, there is no other family member capable of providing the type of care that Mr. Mehar has provided for his daughter continuously for the past four and a half years and that will be needed into the foreseeable future. See Attachments -I-, -J-. Rather, attempting to replace him by placing an additional burden on his wife to care for their infirm daughter, while she also takes on the burden of supporting the family, is only likely to further undermine the family's stability and its already precarious financial situation. See *PSI* at Paragraph 55.

    12. Mr. Mehar has been terminated from his accounting position and poses no threat to society, so incapacitation is unnecessary. He has not only lost his employment, but also his previously untarnished reputation. He is painfully aware how he has disgraced his wife and daughters, See Attachment –A-, Defendant's Letter; the nature of the criminal proceedings against him and his felony conviction will therefore have a significant deterrent effect. Mr. Mehar is extremely contrite and has no past criminal history. The Probation Office has concluded that in addition to having already made substantial restitution payments, Mr. Mehar is not in apparent need of correctional treatment, nor does he poses a risk to the community for further crimes and the Court should take these factors into consideration pursuant to the provisions of 18 U.S.C. 3553(a). See *PSI*, at Paragraph 75; See also United States v. Gaskill, 991 F.2d 82, 86 (3d Cir.1993) (factors warranting departure to non-custodial sentence for credit fraud defendant with disabled spouse included "the lack of any end to be served by imprisonment other than punishment" and "the lack of any threat to the community-- indeed, the benefit to it by

allowing the defendant to care for his ailing wife.") The Court may also order that the defendant perform a significant number of community service hours and submit to financial monitoring by the Probation Office, See *PSI* at Paragraph 63, as an alternative way of punishing him for his offense conduct and of further deterring any possible future misconduct. As such, and consistent with the factors enumerated at 18 U.S.C. 3553 (a), the defendant urges the Court to sentence him to a period of probation conditioned upon his payment of a reasonable fine, the completion of 250 hours of community service, and up to 12 months placement on home confinement with electronic monitoring.

        Respectfully submitted,

_____
Mitchell M. Seltzer,
D.C. Bar #261933
717 D Street, NW, #310
Washington, D.C. 20004
(202) 347-2333

_____
Herbert N. Harmon,
D.C. Bar #
1010 Vermont Avenue, NW, #810
Washington, DC 20005
(202) 783-9100

Attorneys for Mr. Dinesh Mehar

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum In Aid Of Sentencing was served electronically upon Susan Menzer, A.U.S.A., United States Attorney's Office, 555 Fourth Street, NW, this 22d day of August 2007.

_____